NORTH CAROLINA

SURRY COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS _1534_

FILED

2018 NOV 15 P 12: 18

SURRY CO., C.S.C.

BY_____ CsM

ROSEMARY G. PULLIAM, NED )
GREENWOOD, KERWOOD LLC, )
DAPHNE ALDRIDGE CARTER, )
and CANDACE ALDRIDGE RICE, )
                    )
      Plaintiffs,      )
                    )
v.                   )
                    )
VULCAN MATERIALS COMPANY )
and VULCAN CONSTRUCTION )
MATERIALS, LLC, successor-by- )
conversion to VULCAN )
CONSTRUCTION MATERIALS, )
LP, )
      Defendants.    )

**COMPLAINT**
(JURY TRIAL DEMANDED)

NOW COME Plaintiffs, Rosemary G. Pulliam, Ned Greenwood, Kerwood LLC,

Daphne Aldridge Carter, and Candace Aldridge Rice (collectively, "Plaintiffs") by and

through counsel, complaining of Defendants, and alleging and saying as follows:

## INTRODUCTION

1.     The subject matter of this lawsuit is a lease dated September 1, 1991, as

evidenced by Memorandum of Lease recorded in Book 510, Page 622 of the Surry

County Register of Deeds. A true and accurate copy of the 1991 Lease and the

Memorandum of Lease are attached hereto and incorporated herein by reference as

**Exhibit A** (collectively, the 1991 Lease and Memorandum of Lease recorded in Book

510, Page 622 of the Surry County Register of Deeds are referred to herein as the

"1991 Lease").

2.     The 1991 Lease has since been amended as evidenced by the Amendment to Lease dated January 21, 1997 recorded in Book 0640, Page 0628 of the Surry County Register of Deeds (the "1997 Amendment"), and the Amendment No. 2 to Lease, as evidenced by the Memorandum of Lease Amendment dated November 29, 2007 and recorded in Book 1295, Page 622 of the Surry County Register of Deeds (the "Amendment No. 2") (collectively, the Amendment No. 2 to Lease and the Memorandum of Lease Amendment dated November 29, 2007 shall be referred to herein as the "2007 Amendment"). A true and accurate copy of the 1997 Amendment is attached hereto and incorporated herein by reference as **Exhibit B**. A true and accurate copy of the 2007 Amendment is attached hereto and incorporated herein by reference as **Exhibit C**.

3.     The 1991 Lease, as amended by the 1997 Amendment and the 2007 Amendment, is referred to herein as the "Lease."

4.     The subject matter of the 1991 Lease are five areas of real property located in Surry County which were leased by Vulcan Materials Company, for "for the purpose and with the right to mine, strip mine, quarry, recover and remove therefrom stone, rock, soil, gravel, minerals and any other construction material found therein or thereon."

5.     The 1997 Amendment provided Vulcan Materials Company the same rights as provided in the 1991 Lease, but expanded the geographical area subject to the 1991 Lease.

2

6. The 2007 Amendment provided Vulcan Construction Materials, LP with the same rights as provided in the 1991 Lease, however several of the terms of the 1991 Lease were revised or amended; additionally, the 2007 Amendment removed certain parcels of real property from the 1991 Lease as those parcels had been sold to Vulcan Lands, Inc.

**PARTIES**

7. Plaintiff, Rosemary G. Pulliam ("Ms. Pulliam"), is a citizen and resident of Forsyth County, North Carolina. Ms. Pulliam is the sole heir of Andy W. Greenwood, who was party to the 1991 Lease. Ms. Pulliam was party to the 2007 Amendment. Ms. Pulliam has a one-third interest in the land which is subject to the Lease.

8. Plaintiff Ned Greenwood ("Mr. Greenwood") is a citizen and resident of Denver, Colorado. Mr. Greenwood is an heir of Wade and Margaret Greenwood, who were party to the 1991 Lease. Mr. Greenwood, in his capacity as trustee of the then-existing Greenwood Family Trust, was party to the 2007 Amendment. Mr. Greenwood has a one-sixth interest in the land which is subject to the Lease.

9. Plaintiff Kerwood LLC is a limited liability company organized and existing under the laws of the State of California with a principal place of business in Bakersfield, California. Kerwood LLC is managed by Judy G. Tupper ("Ms. Tupper"). Ms. Tupper is an heir of Wade and Margaret Greenwood, who were party to the 1991 Lease. Ms. Tupper, in her capacity as trustee of the then-existing Greenwood Family Trust, was party to the 2007 Amendment. Kerwood LLC has a one-sixth interest in the land which is subject to the Lease.

3

10.    Plaintiff Daphne Aldridge Carter ("Ms. Carter"), is a citizen and resident of North Myrtle Beach, South Carolina. Ms. Carter is an heir of Mary G. Aldridge who was party to the 1991 Lease and the 2007 Amendment. Ms. Carter has a one-sixth interest in the land which is subject to the Lease.

11.    Plaintiff Candace Aldridge Rice ("Ms. Rice"), is a citizen and resident of Marshall, North Carolina. Ms. Rice is an heir of Mary G. Aldridge who was party to the 1991 Lease and the 2007 Amendment. Ms. Rice has a one-sixth interest in the land which is subject to the Lease.

12.    Collectively, Ms. Pulliam, Mr. Greenwood, Kerwood LLC, Ms. Carter and Ms. Rice are referred to herein as "Plaintiffs."

13.    Plaintiffs are informed and believe and therefore allege that Defendant Vulcan Materials Company is a corporation incorporated in and existing under the laws of the State of New Jersey, authorized to conduct business within the State of North Carolina, with a principal place of business in Jefferson County, Alabama and a registered mailing office in Wake County, North Carolina.

14.    Plaintiffs are informed and believe and therefore allege that Defendant Vulcan Construction Materials, LLC, successor-by-conversion to Vulcan Construction Materials, LP is a limited lability company established in and existing under the laws of the State of Delaware, authorized to conduct business within the State of North Carolina, with a principal place of business in Jefferson County, Alabama and a registered mailing office in Wake County, North Carolina. Collectively, Vulcan

4

Materials Company and Vulcan Construction Materials, LLC are referred to herein as "Vulcan".

## FACTUAL BACKGROUND

15.    The Lease operates on a lease year from September 1 through August 31.

16.    The Lease provides that Vulcan will make payment to the Plaintiffs in the form of three different royalties: (a) the Minimum Annual Royalty (paragraph 2(a) of the Lease); (b) the Earned Royalty (paragraph 2(b) of the Lease (as amended)); and (c) the Processing Royalty (paragraph 2(c) of the Lease (as amended)).

17.    Vulcan pays the Minimum Annual Royalty of $30,000.00 each lease year.

18.    Vulcan only pays the Earned and Processing Royalties to the extent those amounts, added together, exceed the Minimum Annual Royalty.

19.    The Earned Royalty is based upon the removal of stone and other geological products from the portion of land owned by the Plaintiffs.

20.    The Processing Royalty is based upon the removal of stone and other geological products from the portion of land that adjoins the land owned by the Plaintiffs.

21.    In order to determine the Earned and Processing Royalties Vulcan must determine and calculate the amount of stone and other geological products that are removed from the land owned by Plaintiffs as well as the amount of stone and other geological products that are removed from the land adjoining the Plaintiffs' land (collectively, the land owned by Plaintiffs and the land adjoining the Plaintiffs' land, which land is subject to the Lease, are referred to herein as "Leased Land").

5

22.	In addition to calculating the Earned and Processing Royalties, paragraph 2(e) of the Lease requires Vulcan to "keep accurate and complete records pertaining to all matters set out in Paragraphs 2(b) [the Earned Royalty] and 2(c) [the Processing Royalty]."

23.	Vulcan began engaging in reconciliations, thus determining that in years past it had overpaid the Plaintiffs, and pursuant to statements to Plaintiffs, asserted that Plaintiffs owed set amounts to Vulcan and those amounts would be used to reduce the amount of Earned and Processing Royalties that would be paid to Plaintiffs.

24.	The reconciliations evidence that Vulcan's original reporting calculations are grossly inaccurate in terms of what Vulcan reports versus what Vulcan then claims is actually removed from the Leased Land.  For example:

> A. For the lease year ending in 2015 Vulcan reported 99,884 tons as quarried from the Leased Land.  Vulcan then reported that the adjusted amount for the lease year ending in 2015 as 45,551 tons, thus that Vulcan's reporting was off from what it reported to what it now has declared to be actual tons quarried by - 119.28%; and

> B. For the lease year ending in 2016 Vulcan reported 199,291 tons as quarried from the Leased Land.  Vulcan then reported that the adjusted amount for the lease year ending in 2016 as 57,807 tons, thus that Vulcan's reporting was off from what it reported to what it now has declared to be the actual tons quarried by - 244.75%.

6

Vulcan has then asserted that the royalty amounts it paid to Plaintiffs based upon the reported tons should be recalculated based upon what Vulcan now contends are the actual tons quarried and that the overpayment to Plaintiffs should be credited against any amount Vulcan will owe Plaintiff in the year ending in 2017.

25. Vulcan provided its reporting and reconciliations for the lease year from September 1, 2015 through August 31, 2016 on September 29, 2017 (the "2015-2016 Report")

26. The calculations of the Earned and Processing Royalties that exist in the 2015-2016 Report appear to have been based upon a Production Royalty Evaluation which was completed by the firm MM&A in June of 2017 (the "MM&A Report").

27. Vulcan provided the Plaintiffs with a summary of the MM&A Report, and upon information and belief said report been based upon a site visit by MM&A to the quarry in Surry County on March 23, 2017. The MM&A Report further appears to have been based upon a physical review of the quarry in Surry County as it existed in March of 2017 in addition to computer calculations and representations of the amount of stone and other geological products which would have existed at the quarry as of September 2015 versus September 2016.

28. The MM&A Report is thus done retroactively.

29. Vulcan has not provided records evidencing the removal of stone and other geological products which records are made contemporaneously with said removal.

30. The MM&A Report does not provide the Plaintiffs with an accounting for the amount of stone and other geological products which are removed from the land

7

owned by Plaintiffs, and thus subject to the Earned Royalty versus the amount of stone and other geological products which are removed from the land which adjoins that land owned by Plaintiffs and are thus subject to the Processing Royalty.

31. As of the date of this Complaint Vulcan has not provided Plaintiffs with the cumulative reports and records for the lease year ending in 2017.

32. On April 17, 2018 in accordance with Paragraph 2(h) of the Lease, Plaintiffs notified Vulcan that they had completed an audit of the records and reports which were provided by Vulcan for the two lease years ending on August 31, 2016 and that they disagreed with the calculations contained therein. Vulcan did not provide a response to the April 17, 2018 letter.

33. Plaintiffs have engaged in multiple communications with Vulcan to resolve the issues related to the Lease without the necessity of filing this action but have not been able to reach resolution.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

34. The allegations contained in paragraphs 1 through 33 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

35. On or about September 1, 1991 Plaintiffs' predecessors entered into the Lease with Defendant, which Lease is a valid and binding contract.

36. The Lease provides that Vulcan will pay Plaintiffs the Minimum Annual Royalty, and when the amount of stone and other geological product removed from the land subject to the Lease exceeds the Minimum Annual Royalty, then Vulcan will pay Plaintiffs the Earned Royalty and Processing Royalty. The Lease further requires

8

Vulcan to keep to "keep accurate and complete records pertaining to all matters set out in Paragraphs 2(b) [the Earned Royalty] and 2(c) [the Processing Royalty]."

37. The Lease does not provide for a mechanism pursuant to which Vulcan can engage in reconciliations for alleged over-payment for Lease years prior and credit those overpayments against the payment of any amounts due Plaintiffs.

38. Plaintiff have performed as required pursuant to the terms of the Lease.

39. Vulcan has failed to perform under the terms of the Lease; specifically, Vulcan has failed to keep accurate and complete records regarding the removal of stone and other geological products from the land subject to the Lease, has failed to provide grounds for its reconciliation and demand of credit towards the next years' royalty payments, and has failed to respond to Plaintiffs' April 17, 2018 audit letter, thus Vulcan is in breach of the terms of the Lease.

40. Pursuant to the terms of the Lease and N.C. Gen. Stat. § 6-21.2 and 6-21.6, Plaintiffs hereby give notice to Defendants of their intent to enforce the attorneys' fee provisions found therein.

41. As a direct and proximate result of Vulcan's breach of the Lease, Plaintiffs have been damaged in an amount in excess of twenty-five thousand dollars ($25,000.00) with a specific amount to be proven at trial and which amount continues to accrue interest from April 17, 2018 until paid at the maximum legal rate, plus costs and attorneys' fees as allowed by law.

9

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment – Alternative to Breach of Contract)

42. The allegations contained in paragraphs 1 through 41 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

43. In the event the terms of the Lease were found not to govern this action, or for the Court to determine that the terms of the Lease are otherwise inapplicable to this action, which Plaintiffs denies, Plaintiffs assert in the alternative to their claim for breach of contract, one for unjust enrichment.

44. Plaintiffs conferred a benefit upon Vulcan by permitting Vulcan to remove stone and other geological products from the Leased Land. Vulcan benefited from the removal of the stone and other geological products in the form of processing and sale.

45. Plaintiffs' allowance of Vulcan's removal of stone and other geological products from the Leased Land was not done gratuitously, rather Plaintiffs, owners of the land which is subject to the Lease, understood and believed that they would be compensated financially therefore.

46. Vulcan accepted the benefit of the stone and other geological products from the Leased Land, and did so with the knowledge that Plaintiffs expected to receive compensation therefore.

47. Vulcan has been unjustly enriched by Plaintiffs allowing it to remove stone and other geological products from the Leased Land without just compensation therefore. As a result, Plaintiffs have been damaged in an amount in excess of twenty-five thousand dollars ($25,000.00) with a specific amount to be proven at trial

10

and which amount continues to accrue interest from April 17, 2018 until paid at the maximum legal rate.

WHEREFORE, Plaintiffs pray to the Court as follows:

1.  That they have and recover damages against Defendants, jointly and severally, in an amount in excess of twenty-five thousand dollars ($25,000.00), with specific amount to be proved at trial;

2.  That they have and recover their attorneys' fees from Defendants, jointly and severally, as allowed by law;

3.  That they have and recover of Defendants, jointly and severally, an award of pre-judgment and post-judgment interest;

4.  That they have a trial by jury as to all issues so triable; and

5.  For such other and further relief as the Court deems just and proper.

This the ____9th____ day of ____November____ 2018.

CRAIGE JENKINS LIPFERT & WALKER LLP
Attorneys for Plaintiff

By_____
H. David Niblock
110 Oakwood Drive, Suite 300
Winston-Salem, NC 27103
Telephone: (336) 725-2900
Facsimile: (336) 723-7308
N.C. State Bar No. 9976
dniblock@craigejenkins.com

11

NORTH CAROLINA     )
                   )          **MEMORANDUM OF LEASE**
SURRY COUNTY       )

    THIS MEMORANDUM OF LEASE, made and entered into as of the 1st day of September, 1991, by and between WADE H. GREENWOOD and wife, MARGARET K. GREENWOOD, ANDY W. GREENWOOD and wife, DOROTHY GREENWOOD, and MARY G. ALDRIDGE and husband, EUGENE ALDRIDGE (hereinafter referred to as "Owners") and VULCAN MATERIALS COMPANY, a New Jersey Corporation, by and through its Mideast Division (hereinafter referred to as "Lessee").

## W I T N E S S E T H:

    1.    Owners and Lessee entered into that certain Lease (the "Lease") of even date wherein Owners leased to Lessee certain premises described in Exhibit "A" and Exhibit "A-1" (hereinafter the "Premises").

    2.    The parties hereby agree that the term of the Lease commences on September 1, 1991 and ends on August 31, 2001.

    3.    The term of the Lease may be renewed for seven (7) additional periods of five (5) years each.

    4.    All provisions of the Lease are incorporated herein by reference.

    IN TESTIMONY WHEREOF, Owners and Lessee have hereunto set their hands and seals as of the day and year first above written.

OWNERS:

_____ (SEAL)
WADE H. GREENWOOD

_____ (SEAL)
MARGARET K. GREENWOOD

_____ (SEAL)
ANDY W. GREENWOOD

_____ (SEAL)
DOROTHY GREENWOOD

W#29934


PLAINTIFF'S EXHIBIT
A

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 12 of 55

BOOK 510  P 0623

_____ Mary G. Aldridge (SEAL)
MARY G. ALDRIDGE
_____ Eugene Aldridge (SEAL)
EUGENE ALDRIDGE

LESSEE:

VULCAN MATERIALS COMPANY,
Mideast Division

By: _____
Senior Vice President,
Construction Materials Group

[Corporate Seal]

ATTEST:
_____ Secretary

W#29934

-2-

B0510 P0624

STATE OF _Arizona_ )
COUNTY OF _Maricopa_ )

I, _Lai Miller_ , a Notary Public of the County and State aforesaid, do hereby certify that WADE H. GREENWOOD and wife, MARGARET K. GREENWOOD, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and notarial stamp/seal, this the _7_ day of _OCT._ , 1991.

_L. C. Miller_
Notary Public

My Commission Expires:
My Commission Expires June 5, 1993        [Stamp/Seal]

STATE OF _N.C._ )
COUNTY OF _Davidson_ )

I, _Susan T. Simpson_ , a Notary Public of the County and State aforesaid, do hereby certify that ANDY W. GREENWOOD and wife, DOROTHY GREENWOOD, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and notarial stamp/seal, this the _1_ day of _Oct._ , 1991.

_Susan T. Simpson_
Notary Public

My Commission Expires:
_11-28-95_        [Stamp/Seal]

OFFICIAL SEAL
SUSAN T. SIMPSON
NOTARY PUBLIC-NORTH CAROLINA
COUNTY OF DAVIDSON
My Commission Expires November 28, 1995

W#29934        -3-

Case 1:18-cv-01017-CCE-JLW  Document 3  Filed 12/14/18  Page 14 of 55

# Surry County Internet Copy

STATE OF _North Carolina_ )
COUNTY OF _Yadkin_ )

I, _Lori Wells_ _____, a Notary Public of the County and State aforesaid, do hereby certify that MARY G. ALDRIDGE and husband, EUGENE ALDRIDGE, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and notarial stamp/seal, this the _14th_ day of _October_, 1991.

Lori Wells
Notary Public

My Commission Expires:
_4/3/94_

[Stamp/Seal]

OFFICIAL SEAL
Notary Public - Yadkin Co., N. C.
LORI WELLS
My Commission Expires

***************************************

STATE OF _Alabama_ )
COUNTY OF _Jefferson_ )

I, _Kirk S. Mullins_, a Notary Public of the County and State aforesaid, certify that _William F. Denson III_ personally came before me this day and acknowledged that he/she is Assistant Secretary of VULCAN MATERIALS COMPANY, a New Jersey Corporation, Lessee, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its Senior Vice President, sealed with its corporate seal and attested by him/her as its Assistant Secretary.

WITNESS my hand and official seal, this the _26th_ day of _September_ 1991.

Kirk S. Mullins
Notary Public

My Commission Expires:
_6-22-93_

[Stamp/Seal]

STATE OF NORTH CAROLINA, COUNTY OF SURRY

'91 OCT 29 AM :20

The foregoing or following certificate(s) of _Lori L. Miller N. Catherine,_
_Susan T. Simpson N.C., Danibar S.N.C. +_
_Lori Bell N.C. Ellis C.N.C_
is (are) certified to be correct.

DENISE A. "DEL" CAMERON
REG'S'LR OF DEEDS
SURRY COUNTY, N.C.

DENNIS W. "BUD" CAMERON
REGISTER OF DEEDS
_16.08_

BY: _____
Assistant-Deputy

Exhibit "A"

Located in Elkin Township, Surry County, North Carolina:

Boundary lines of area proposed to be leased by Vulcan Materials Co. from Greenwood's.

1- Home place of I.N. & Mamie Greenwood as shown in survey map done by J. L. Mackie March 1952, excluding house and other buildings including 4.335 acre belonging to Mary Aldridge. Book 133 Page 17, & Book 83 Page 116.

2- 21 lots in Hillcrest development Section 2 Block C. This property shown in Book 4 Page 164 in Register of Deeds Office.

3- Following lots shown in Hillcrest Development Section 1B Block B, lots 7-58 Inc., #94-145 inc. Block A 1-65 inc. #178. These lots shown in Book 4 Page 163 Register of Deeds Office.

4- Track #1 East Park Development Section 2, known as the Garden area. Book 4 Page 120.

5- East Park Development Section 1, track 167 & 168. This track known as Burch Property at one time, and shown in Book 202 Page 91 Register of Deeds Office.

NOTE: The property shown above in #1 is the property presently leased to Vulcan Materials Co. by I. N. & Mamie Greenwood on January 20, 1960.

NOTE: Any discrepancy in the identification of the Premises described in this Exhibit "A" and on the map attached as Exhibit "A-1" shall be resolved in favor of the Exhibit which shows the greatest amount of real property being leased as the Premises.

W#9031

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 16 of 55



Exhibit "A-1"


Wade H. Greenwood
26255 S. Brentwood Dr.
Sun Lakes, AZ 85248

602-895-0202
480-

NORTH CAROLINA
SURRY COUNTY

## LEASE

THIS LEASE made and entered into this 1st day of September, 1991, by and between WADE H. GREENWOOD and wife, MARGARET K. GREENWOOD, ANDY W. GREENWOOD and wife, DOROTHY GREENWOOD, and MARY G. ALDRIDGE and husband, EUGENE ALDRIDGE; hereinafter sometimes called "Owners," and VULCAN MATERIALS COMPANY, a corporation organized and existing under the laws of the State of New Jersey, with its Mideast Division offices located in Winston-Salem, North Carolina, hereinafter sometimes called "Lessee."

### WITNESSETH:

WHEREAS, the Owners own a certain tract or tracts of real property (the Premises) more particularly described in Exhibit "A" and on the map identified as Exhibit "A-1" attached hereto and made a part hereof by reference; and

WHEREAS, Lessee desires to lease said Premises for the purpose and with the right to mine, strip mine, quarry, recover, and remove therefrom stone, rock, soil, gravel, minerals and any other construction material found therein or thereon.

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) paid to Owners by Lessee, the receipt and sufficiency of which is hereby acknowledged, and for other good and valuable considerations, including the covenants and conditions set forth below, the parties agree as follows:

1.    Owners hereby lease and let to Lessee and said Lessee does hereby accept as Tenant of Owners the Premises previously described herein for a term of ten (10) years, commencing on September 1, 1991 and ending on August 31, 2001. Owners also grant to Lessee the option to renew this Lease for seven (7) additional periods of five (5) years each, with said renewals to occur automatically unless Lessee, within sixty (60) days prior to the end of the then current term, provides Owners with written notice that Lessee will not renew for any additional terms.

W#9031

2.     For each "Lease Year", during the term of this Lease, or any extension thereof:

(a)     Lessee shall pay to the Owners a Minimum Annual Royalty of Thirty Thousand Dollars ($30,000.00) (the "Minimum Annual Royalty").

(b)     For each Lease Year beginning as of the commencement of the Lease term, the Lessee shall pay additional royalty at the rate of Seventeen and One-Half Cents (17.5¢) per ton (2,000 pounds) of stone, rock, gravel, minerals, and other construction materials (hereinafter collectively "stone"), quarried, sold and removed from the Premises (hereinafter "Earned Royalty"). Earned Royalty shall be paid only to the extent that such Earned Royalty plus Processing Royalty (hereinafter defined) exceeds prepaid Minimum Annual Royalty. During such time, and from time to time during any Lease Year that the Earned Royalty plus Processing Royalty has equaled the Minimum Annual Royalty, Lessee shall make monthly payments to Owners for the amounts of Earned Royalty in excess of the prepaid Minimum Annual Royalty. These payments shall be made in the month following the sale and removal of the stone. Notwithstanding the above, any portion of Minimum Annual Royalty not previously offset by Earned Royalty may be carried forward and offset against all future Earned Royalties.

(c)     Lessee shall pay Owners a processing royalty of Ten Cents (10¢) per ton (2,000 pounds) of stone quarried on adjoining lands, but processed, stored, or passed through the Premises (hereinafter the "Processing Royalty"); provided, however, that no Processing Royalty shall be paid until Earned Royalty and Processing Royalty have exceeded the Minimum Annual Royalty of Thirty Thousand Dollars ($30,000.00) in one Lease Year. Lessee shall then pay Processing Royalty on a monthly basis to Lessor on the amount so computed which exceeds Thirty Thousand Dollars ($30,000.00), until the end of that Lease Year. Notwithstanding the above, any portion of Minimum Annual Royalty not previously offset by Processing Royalty may be carried forward and offset against all future Processing Royalties.

(d)     For each Lease Year, Lessee shall compute and determine an amount equal to three and one-half percent (3 1/2%) of the average net selling price (FOB the quarry) per ton (2,000 pounds) on stone which is quarried, sold and removed from the Premises (hereinafter the "Percentage Royalty"). The term "average net selling price" shall be construed and defined to mean the average payment received by Lessee, FOB trucks, calculated on a per ton basis after giving effect to any discounts and excluding therefrom sales and use taxes, hauling costs (whether performed by Lessee or third parties) and other normal charges by third parties

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 19 of 55

against sales prices. The phrase "and other normal charges by third parties against sales prices" shall not be construed to mean any production costs involved in production of the materials being sold. The Percentage Royalty shall be paid only to the extent that it exceeds the prepaid Minimum Annual Royalty in any Lease Year, plus any amounts owed as Earned Royalty as set out in Paragraph 2.(b) above. Within sixty (60) days after the close of each Lease Year, Lessee shall pay to the Owners the difference between the amounts previously owed under Paragraphs 2.(a) and 2.(b) and the Percentage Royalty based on the average net selling price.

(e)     Lessee shall keep accurate and complete records pertaining to all matters set out in Paragraphs 2.(b) and 2.(c). The Owners or their agents shall, at reasonable times, have access to Lessee's records of production and sales from the Premises and the right to inspect and copy such records, with respect to the materials mined, processed and shipped from said Premises, including copies of the weight tickets covering each shipment of materials shipped from or processed on said Premises. Any statement of Lessee with respect to quantities shipped from said Premises by Lessee, furnished as hereinabove provided, shall be deemed to be correct unless written objection with respect thereto has been delivered to Lessee within one (1) year after such statement is so furnished. Owners shall keep all financial information received from Lessee confidential.

(f)     The payment of royalties in the amount and manner hereinabove set forth shall constitute payment in full for all stone quarried, mined, processed, shipped or sold from the Premises and shall constitute payment in full for Lessee's use of the Premises, for any purpose whatsoever, whether or not Lessee has conducted any quarrying or other operations on the Premises during the period for which the payment has been made.

(g)     If Lessee assigns the Lease to another party, Lessee shall remain liable for the performance of the Lease and payment of royalties.

(h)     Lessee shall maintain records covering the operation of the quarry and the Owners shall have the right, at reasonable times, within the next succeeding Lease Year, to examine these records and have the records audited by personnel chosen by Owners. If Owner's audit of Lessee's records prove that Lessee has understated lease payments for a Lease Year, Lessee shall pay the additional amount within thirty (30) days after the results of the audit, unless Lessee disagrees with Owners' audit report, in which case, Lessee and Owners agree to employ a mutually agreeable auditor, at Lessee's expense, to make a final and binding

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 20 of 55

determination of all amounts due Owners. Lessee will continue to send to Owners the monthly report of quarry and sales report that Lessee is now sending to Owners.

(i)     Lessee shall have exclusive possession of the Premises except as to the possessory uses provided for in this Paragraph 2.(i). Lessee agrees to permit Owners to continue to lease, operate and/or use the Premises for the following activities: (1) farming; (2) hot mix plant operation for so long as operated by the present management of Carl Rose Asphalt Company; and (3) the rental of the single-family residence now rented by Owners to a third party together with the 4.9-acre tract on which said residence is located; provided that such activities do not materially interfere with Lessee's ingress and egress to and from the Premises nor otherwise materially interrupt its operations thereon. Such activities by Owners shall be limited to those respective portions of the Premises on which such activities are now being conducted. If at any time during the term of this Lease, Lessee, in its sole judgment, determines that the use of all or any portion of the Premises used for the aforesaid activities is needed by Lessee in its operations on the Premises, upon giving one year's written notice to Owner, Lessee may require Owner and its tenants, if applicable, to vacate such portions of the Premises. Subject to the foregoing provisions of this Paragraph 2.(i), Owners may continue the rental (and receive the rent therefrom) of the aforesaid single-family residence. Owners agree that they shall not, during the term of this Lease, operate or allow any other person, firm, entity or corporation to operate on the Premises or any other property now owned or subsequently acquired by the Owners in Surry, Yadkin or Wilkes Counties, North Carolina, any mining, quarrying or other business which is identical with or similar to the type of work or operations permitted under this lease. Owners shall not lease the Premises for any hot mix plant other than to the present owners of Carl Rose Asphalt Company. Owners may continue the present farming operations upon the Premises, but shall not expand said operations.

3.     Owners hereby expressly grant to the Lessee the following rights during the term of this Lease:

(a)     The exclusive right to mine, strip mine, quarry, recover, and remove from the Premises stone, rock, soil, gravel, minerals and any other construction material found thereon or therein; the right to crush, process, stockpile, sell, trade and market on the Premises any of such materials, whether obtained from the Premises or elsewhere; the right to use such portions of the Premises as may be reasonably necessary or convenient for the mining, strip mining, quarrying, crushing, processing, stockpiling, selling, recovering and removing of any of the materials referred to above and for the installation of equipment, machinery, utilities, tools, vehicles, rigs and plants in connection therewith; and the right to dump dirt,

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 21 of 55

overburden and other waste materials upon the Premises, but Lessee shall not be required to backfill mined or quarried property but shall only be required to reclaim mined or quarried property as required by applicable law in effect at the termination of this Lease and, upon such termination, to leave the Premises in compliance with all applicable laws including, but not limited to, environmental and reclamation laws; provided, however, that nothing herein shall obligate Lessee to remove any toxic or hazardous waste or substances or redress or improve any environmental or other condition which existed in or upon the Premises at the commencement of this Lease; nor shall Lessee be obligated to remove any such waste or substances or redress or improve any such condition which was placed or created by a third party in or upon a portion of the Premises over which Lessee, at the time of such placement or creation, did not have exclusive possession and control.

(b)     The right to go in and out freely from the Premises including the right to widen and improve existing roads and construct new roads through and over the Premises as may be reasonably necessary for the operations of Lessee, and in a manner designed to minimize, to the extent practicable, any inconvenience and damage to Owners resulting from the preparation and use of open rights-of-way, and the right to make disposition on the Premises of such spoil as may result from such mining, strip mining, quarrying or other operations, without liability to Owners or others for damage to the Premises.

(c)     The right to erect, operate and maintain on the Premises rock crushing plants, bins, bituminous mixing plants, railroad spur tracts, concrete batching plants, and any other plants, building, fixtures and/or attachments reasonably necessary or convenient to the operations carried on by Lessee or its associated parties.

(d)     The right to install, operate and maintain on the Premises power lines, telephone lines, poles, guy wires and any other attachments, water and sewer lines, and other similar installations or utilities reasonably necessary to the operations carried on by Lessee or its associated parties, which installation, operation and maintenance shall be in a manner designed as reasonably as practicable to minimize any inconvenience and damage to Owners.

(e)     The right to remove all of any of such plants, buildings, spur tracks, or other fixtures and attachments erected or placed on the Premises by Lessee or its associated parties.

W#9031                                                -5-

(f)     The right to go in and upon the Premises after this Lease has terminated and remove any of the items mentioned in Subparagraphs (c) and (d) above, which have been installed by Lessee, or any stone or other materials which have been stockpiled upon the Premises; said right to go in and remove any of said items shall extend for a period of 180 days from the expiration date of the Lease. The title to buildings, structures and equipment erected or placed upon the Premises by Lessee shall be and remain Lessee's property and may be removed by it at any time while this Lease is in force or within 180 days thereafter. At the termination of this Lease by lapse of time or otherwise, all structures erected by Lessee and permanently affixed to the Premises shall become the property of Owners if not removed by Lessee within 180 days after termination of this Agreement. If improvements or personal property remain on the Premises more than 180 days after termination of this Agreement, Owners have the option of accepting the improvements or personal property as their own or requiring Lessee to remove those improvements or personal property from the Premises at its sole expense. Notwithstanding anything in this Lease to the contrary, Lessee shall pay to Owners, for the rights herein set out in this Subparagraph 3.(f) the Earned Royalty, Processing Royalty or Percentage Royalty for stone removed from the Premises after the expiration date of the Lease.

(g)     Lessee shall have no right or option to renew this Lease for an additional term if Lessee is in Default (as defined in Paragraph 17 hereunder). If Lessee exercises the option to renew this Lease, then all of the terms set out in this Lease shall continue in full force and effect for such renewal period.

4.      All Lessee's work on said Premises shall be done in a good and workmanlike fashion in accordance with usual practices in the State of North Carolina and in compliance with all applicable laws, ordinances and governmental regulations; provided, however, that all such work shall be under the sole control and management of Lessee as to the time, place and manner of operations.

5.      If Lessee discovers that commercially valuable minerals, oil or ores, other than the construction materials described above, exist on the Premises, then it shall immediately so notify the Owners of such discovery. Lessee shall have no duty to recover or protect such materials on behalf of Owners.

6.      If, at any time during the term of the Lease, in the reasonable discretion of Lessee, the stone or other construction material becomes depleted or the removal thereof becomes impossible or not economically feasible due to market conditions or due to the scarcity thereof or the nature of the Premises or due to any order or ruling of any Court or other governmental entity, Lessee may, by giving Notice to Owner, terminate this

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 23 of 55

Lease. Except for Lessee's rights under Paragraph 3.(f) hereof, termination of the Lease shall become effective and the rights, duties and privileges of the parties hereunder shall terminate thirty (30) days from the date of the notice of termination.

7. Subject to the provisions of Paragraph 3.(a) of this Lease, Lessee shall not be liable for, or on account of, any damage or injury to the Premises and shall be under no duty during the term of this Lease or thereafter to restore the Premises to the state thereof which existed prior to the effective date of this Lease or to render the Premises suitable for farming, habitation or any other purpose. Lessee shall be under no duty during the term of this Lease to commence quarry or mining operations or to recover or remove stone from the Premises, it being agreed that the payment of Minimum Annual Rent is made in lieu of any such obligation.

8. Lessee agrees to indemnify and hold harmless Owners against all claims and demands of any kind or nature that may be made against Lessee or against the Premises for or on account of any debt or expense contracted or incurred by Lessee, as well as from and against the consequences of any and all negligent or intentional acts or omissions by Lessee, its agents or servants; provided, however, that Lessee shall have no such obligation with respect to any claims or demands for or on account of any debt or expense to the extent contracted or incurred by any of the Owners, or any of their agents or servants, or with respect to any claims, demands, rights of action or losses resulting in whole or in part from, or as consequences of, any negligent or intentional acts or omissions of any of the Owners or any of their agents or servants. Lessee shall not have any liability to Owners after complete surrender of the Premises to Owners, provided Lessee has complied with all existing laws regarding the Premises and with all terms of this Lease; and further provided that Lessee has not been negligent in regard to the condition of the Premises upon surrender to Owners. Owners shall defend, indemnify and hold Lessee harmless from all losses, damages and expenses resulting from any claims, demands or rights of action that may be asserted at any time against Lessee for damage to property or injury to or death of any person which occurs on the Premises under the control of Owners or after the expiration or other termination of this Lease and after surrender by Lessee to Owners of possession of the Premises in accordance with the provisions of this Lease.

9. Lessee agrees to comply with all federal and state laws and regulations, now applicable to its operations on the Premises or any aspect thereof, including Workers' Compensation, Occupational Safety and Health and Air, Water and Environmental Quality and Reclamation laws, and Lessee agrees to make all payments, returns and reports required by such laws.

W#9031

-7-

10.  Owners represent and warrant that they are the owners in fee simple of the Premises, including oil, gas, sand, gravel, stone, clay, shale and all other mineral rights, that they have the right to lease the Premises to Lessee as herein provided and that the Premises are free and clear of all liens or encumbrances which might adversely affect the operation of Lessee thereon and that Owners will protect said Premises from all liens or encumbrances, except such as may arise by reason of acts of Lessee, and Lessee agrees that it will not permit said Premises to become subject to any liens or encumbrances by reason of any act on its part.  Owners warrant and shall defend Lessee's leasehold interest against claims of all persons and shall keep Lessee in quiet possession of the Premises during the term of this Lease.  In the event there is any default in the payment of any liens, mortgages or other obligations against the Premises, Lessee may, in its sole discretion, pay the same and credit any payment against any obligations due Owners under this Lease.

11.  If Lessee or its associated parties are prevented, after commencing operations, from operating as described in Paragraph 3 hereof because of the fact that title to, or the right to the temporary use of all or a part of the Premises is taken under the exercise of the power of eminent domain or fire, flood, labor dispute, act of God, ruling of court, administrative or governmental body or zoning restriction, then Lessee shall be relieved, during the period it is so prevented from operating, from making payments hereunder to Owners including Minimum Annual Rent, except for payments due under Paragraph 2 for stone actually quarried, sold and removed from the Premises, unless the ruling of court, administrative or governmental body, or zoning restriction shall exist because of the failure of or wrongful acts on the part of Lessee.  Further, if the Minimum Annual Rent is reduced as herein allowed, it will be reduced on a percentage basis by reducing the Minimum Annual Rent by the percentage of the year of non-operation and the percentage of the property leased that is nonoperational.

12.  Upon the execution of a release of liability, acceptable to Lessee, duly authorized representatives of the Owners shall have the right, at reasonable times, to enter upon the Premises at their own risk for the purpose of examination and inspection.  During such times as Lessee shall be conducting mining operations on said property, Owner agrees that its representatives shall inspect that portion of the property being mined only when accompanied by a representative of Lessee, only in accordance with any safety rules or restrictions which may be presented by Lessee and only when to do so would not interfere with Lessee's operations.

13.  Lessee shall furnish and pay for all labor, power, tools, materials and all other materials and supplies that may be used by it in the prosecution of work upon said Premises.

W#9031

-8-

14. Lessee shall pay, before they become delinquent, all taxes, including but not limited to, property and severance taxes assessed and levied upon the Premises and on all of Lessee's equipment, supplies and other tangible personal property located upon the Premises and on buildings, structures and improvements erected or placed by Lessee upon the Premises. Nothing herein contained shall prevent Lessee from contesting any tax levied or assessed against Lessee or property of Lessee located on the Premises. Lessee shall provide Owners on or before December 31st of each year during the term of this Lease or any extension or renewal thereof, a copy of receipts evidencing payment of any real property or severance taxes on the Premises for the preceding calendar year. In the event the taxes have not been paid by December 31, Owners may, at their option, elect to pay said taxes and the sums so paid, including interest and penalties assessed, if any, shall be deemed additional lease royalty due Owners pursuant hereto. Taxes for the first and last Lease Year shall be prorated on a calendar year basis.

15. Owners agree to completely cooperate with Lessee in its applications for, and hearings relating to, any zoning or rezoning or other governmental approval or authority necessary to permit the commercial quarrying activities and related activities on the Premises or on any other property owned or controlled by Lessee. Owners shall receive no additional compensation for said cooperation, but all fees and cost associated with said applications and hearings including, but not limited to, attorney's fees, shall be paid by Lessee. For the purposes of this Lease, the term "Rezoning" shall mean zoning or rezoning to permit the extraction, processing, stockpiling and sale of stone, rock, sand, gravel and other minerals and similar quarry operations without requirements or restrictions unacceptable to Lessee of that portion of the Premises which is not currently zoned in such a manner or on any other property owned or controlled by Lessee.

16. If at any time, all or a substantial part of the Premises is taken for any public or quasi-public use under any statute or by right of eminent domain, by condemnation, or by private purchase in lieu thereof by a body vested with the power of eminent domain and the rights taken are such that materially interfere with the operation of Lessee, this Lease shall continue until the date of taking, at which time Lessee may elect to terminate the Lease and any charges which may have been paid in advance by Lessee shall be refunded by Owners to Lessee. If a portion of the Premises is taken under condemnation or as otherwise set out above by any public body or quasi-public entity and Vulcan elects not to terminate this Lease, or if such taking is not such as to materially interfere with Lessee's operations on the Premises, then Lessee shall have the right to have its Minimum Annual Royalty payment reduced by that percentage which the amount of property taken relates to the total amount of acreage leased under this Lease. Neither Owners nor Lessee shall have any right or awards made to the other by reason of such condemnation of taking.

W#9031

-9-

17. Lessee shall be deemed to be in "Default" under this Lease in the event it fails to make any lease payments as herein required, or fails to comply with any of its obligations herein set out, and said failure in payment or failure to comply with the Lessee's obligations herein set out continues for thirty (30) days after Lessee receives written notice of such failure; provided, however, that so long as Lessee complies with those provisions of Section 2(h) pertaining to the audit of its records and dispute resolution with respect to Lease payments, no such Default shall be deemed to exist in the event of a good faith error by Lessee in connection with any Lease payments required herein. Owners shall have the right to terminate this Lease without further notice in event of Default by Lessee.

18. The Lessee for the first one hundred twenty (120) days of the Lease term may purchase a leasehold title insurance policy insuring it against loss on account of defect, lien or encumbrance in title, guaranteeing the area and boundaries and showing good title to the Premises including oil, gas, stone, clay, shale and all other mineral rights to be vested in Owners, free and clear of all defects, liens and encumbrances, easements, restrictions, rights of way, roadways, encroachments or other matters of record or other grants which may effect the use of the Premises by Lessee. If requested to do so, Owners shall cooperate with Lessee and assist Lessee in obtaining such title insurance policy. In this regard, Lessee shall be permitted, at its discretion, to prepare or cause to be prepared, a survey of the Premises. If any deficiency appears of record or by the survey and Owners are unable to correct the deficiency in a manner satisfactory to Lessee within a period of ninety (90) days from the date Lessee gives notice to Owner, Lessee shall have the right to terminate this Lease; said termination shall become effective and the rights, duties and privileges of the parties hereunder shall terminate except for Lessee's rights under Paragraph 3.(f) hereof ninety (90) days from and after the date of said notice of termination. Owners agree to execute a recordable Memorandum of Lease setting out the identities of the parties, a description of the Premises based upon the aforesaid survey, the term of the Lease and all other material provisions hereof. Lessee understands that approximately four and nine-tenths (4.9) acres of the Premises were obtained by a Sheriff's Deed in a tax proceeding. If the title insurance company makes an exception to fee simple title by showing this conveyance as a tax deed, this will not permit the cancellation of this Lease by Lessee. Owners agree to actively defend, at their sole cost and expense, any law suit contesting title to this portion of the Premises.

19. This Lease is not intended to be and shall not create a partnership or joint venture relationship between the parties. It is intended that the sole relationship shall be that of Lessor and Lessee. Lessee shall indemnify and hold Owners harmless from any claim for real estate commission or finder's fee, including the cost of defense of such claim, where such claim arises from the written or oral statement of Lessee or its agents and

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 27 of 55

Owners shall so indemnify and hold Lessee harmless from any such claims which arise from the written or oral statement of Owners or their agents.

20. This Lease represents the complete understanding between the parties hereto and supersedes all prior negotiations, representations or agreements, whether written or oral, as to the matters described herein. Upon commencement of this Lease, the Owners and Lessee hereby release and forever discharge the other from any obligations or duties set out in any prior lease between the parties, with the exception of obligations accruing prior to the commencement of this Lease or accruing thereafter but arising out of facts or circumstances existing prior thereto. This Lease may be amended only by written instrument signed by both parties. No requirements, obligations, remedy or provision of this Lease shall be deemed to have been waived, unless so waived expressly in writing, and any such waiver of any such provision shall not be considered a waiver of any right to enforce such provision thereafter.

21. The parties hereto shall incur no liability for failure to perform any of their obligations hereunder as a result of an act of God, war, disasters, national emergencies, acts of any Government or any Court and the time for performance hereunder shall be extended by the period of the delays caused by the foregoing, unless the acts of any government or any court is precipitated by the negligent act or intentional act of Lessee. Notwithstanding anything set out in this paragraph to the contrary, the term of this Lease, or any renewals thereof, if renewed, shall not extend beyond the times set out in Paragraph 1.

22. If any provisions to this Lease shall be held violative of any applicable law or unenforceable for any reason, the invalidity or unenforceability of any such provision shall not invalidate or render unforceable any other provision hereof, which shall remain in full force and effect. This Lease shall be governed, interpreted and construed under the laws of the State of North Carolina.

23. The notices required or permitted to be made, furnished or given hereunder may be given by hand delivery or by depositing the same in the United States mail, enclosed in an envelope, registered or certified and with postage prepaid, addressed as follows:

Case 1:18-cv-01017-CCE-JLW  Document 3  Filed 12/14/18  Page 28 of 55

To Owners:

    Mrs. Mary G. Aldridge
    136 James Street
    Elkin, NC 28621

To Lessee:

    Vulcan Materials Company
    Attention: President
    P.O. Box 4195
    Winston-Salem, NC 27115-4195

with a copy to:

    General Counsel
    Vulcan Materials Company
    P. O. Box 7497
    Birmingham, AL 35253

and shall be deemed to have been given or furnished when so deposited or, in the case of hand delivery, actual delivery. Either party hereto may change such address by written notice given to the other.

    24. All payments required to be made by Lessee shall be sent payable to Mary G. Aldridge, as Agent for Owners, at the above-referenced address.

    25. Lessee may not assign this Lease without having first obtained the consent, in writing, of Owners. However, Owners will not unreasonably withhold such consent. Lessee may sublease without Owners consent any or all of the Premises for any of the activities allowed by this Lease.

    26. (a) Lessee shall have the right at any time during the term of this Lease to relocate the existing private road which runs generally to the east and west (the "Existing Road") to the location marked in red on Exhibit "A-1"; provided, however, that Lessee shall construct at such new location for the purpose of providing Owners with access to and from the "wildlife club" owned by Owners which is located adjacent to and to the west of the Premises, a road in substantially the same condition as the Existing Road. Lessors agree that the map attached hereto showing the proposed road is acceptable. Lessee shall not change the location of the proposed road without the prior consent of Lessor, which consent will not be unreasonably withheld. Notwithstanding the above, Owners must be afforded reasonably adequate access to the Wild Life Farm.

W#9031

-12-

(b)  Lessee may, at any time during the term of this Lease, petition the appropriate governmental authorities for permission to abandon or relocate a portion of the existing public road known as S. R. 1142 which runs generally in a north/south direction and which is marked in blue on Exhibit "A-1". Owners covenant and agree to cooperate and assist Lessee in obtaining any permission necessary for such abandonment or relocation from such authorities.

27.  This Lease shall be binding upon and inure to the benefit of the respective parties hereto and their heirs, executors, administrators, successors and assigns. Each and every covenant, representation, warranty and obligation of Owners arising pursuant to this Lease shall be the joint and several obligation of each such Owner.

28.  In the event of a default of this Agreement by either party, it is agreed that the party found to be in default will pay all reasonable costs incurred in enforcing this Agreement or any rights arising out of this Agreement, including a reasonable attorney's fee.

29.  Owners represent and warrant to Lessee as follows:

(a)  The Premises and its existing and prior uses comply and have at all times complied with, and Owners are not in violation of, and have not violated, in connection with the ownership, use, maintenance or operation of the Premises, any applicable federal, state or local statutes, laws or regulations relating to environmental matters, including the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Compensation Recovery Act, the Clean Air Act, the Clean Water Act, any "Superfund" or "Superlien" law, the North Carolina Oil Pollution and Hazardous Substances Control Act of 1976, or any other federal, state or local statute, law or regulation relating to or imposing liability or standards of conduct concerning any petroleum or petroleum byproduct (including but not limited to, crude oil, diesel oil, fuel oil, gasoline, lubrication oil, oil refuse, oil mixed with other waste, oil sludge and all other liquid hydrocarbons, regardless of specific gravity) natural or synthetic gas products or hazardous substance or material or dangerous waste, substance or material, pollutant or contaminant.

(b)  No toxic or hazardous waste or material has been released into the environment, or deposited, discharged, placed or disposed of at, on or near the Premises, nor has the Premises been used at any time by any person as a landfill or waste disposal site.

(c)  There are no monitoring wells or subsurface tanks located on the Premises.

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 30 of 55

(d)     Notwithstanding any representation or warranty set out in this Paragraph 29 (a), (b) and (c) to the contrary, Owners make no representation or warranty to Lessee regarding the existence of any of the matters and things set out in Paragraph 29 (a), (b) or (c) within the boundaries of the property heretofore leased to and utilized by Lessee under the Lease dated January 25, 1960, as amended.

30.     Owners shall indemnify and hold Lessee harmless from and against any and all (i) liabilities, losses, claims, penalties, damages (including, but not limited to, lost profits, consequential damages, interest, penalties, fines and monetary sanctions), and costs and (ii) attorneys' and consultants' fees and expenses, court costs and all other out-of-pocket expenses incurred or suffered by Lessee by reason of, resulting from, or in connection with, or arising in any manner whatsoever out of the breach of any warranty or covenant or the inaccuracy of any representation of Owners contained or referred to in Paragraph 29.

IN WITNESS WHEREOF, each of the Owners have hereto set their hands and seal, and Vulcan Materials Company has caused this instrument to be executed in its name by its _____ President, attested by its _____ Secretary and its common seal hereto affixed the day and year hereinabove written.

**OWNERS:**

_____ (SEAL)
WADE H. GREENWOOD

_____ (SEAL)
MARGARET K. GREENWOOD

_____ (SEAL)
ANDY W. GREENWOOD

_____ (SEAL)
DOROTHY GREENWOOD

_____ (SEAL)
MARY G. ALDRIDGE

_____ (SEAL)

W#9031

-14-

EUGENE ALDRIDGE
LESSEE:

VULCAN MATERIALS COMPANY,
~~Mideast Division~~

[Corporate Seal]

By: _Hugh K. Mitchell Jr._
Senior ~~Vice~~ President,
Construction Materials Group

ATTEST:

_M. F. Jensen III_
Secretary

W#9031

-15-

STATE OF NORTH CAROLINA )
                             )     <u>AMENDMENT TO LEASE</u>
COUNTY OF SURRY        )

    THIS AMENDMENT TO LEASE, made this 21st day of January, 1997 by and between WADE H. GREENWOOD and wife, MARGARET K. GREENWOOD, ANDY W. GREENWOOD and wife, DOROTHY GREENWOOD, and MARY G. ALDRIDGE and husband, EUGENE . ALDRIDGE (hereinafter called "Owners"), and VULCAN MATERIALS COMPANY, a corporation organized and existing under the laws of the State of New Jersey, with its Mideast . Division offices located in Winston-Salem, North Carolina (hereinafter called "Lessee");

## WITNESSETH:

    WHEREAS, Owners and Lessee entered into that certain Lease dated September 1, 1991 (the "Lease") for the lease of certain real property (the "Premises") located in Surry County, North Carolina; and

    WHEREAS, Owners represent to Lessee that they are the fee simple title holders to the hereinafter described real property that adjoins the Premises; and

    WHEREAS, the parties hereto desire to amend the Lease to incorporate the hereinafter described tract of land as a part of the Premises as described in the Lease.

    NOW, THEREFORE, the parties hereto agree as follows:

    1.    For and in consideration of the sum of Ten Thousand and No/100 Dollars ($10,000.00) paid to Owners by Lessee, Owners and Lessee do hereby amend the Lease to include the real property described in <u>Exhibit "A"</u> attached hereto as a part of the Premises, as that term is defined in the Lease.

WR0590539.01



**PLAINTIFF'S EXHIBIT**
B

2.    Except for the provisions of this Amendment to Lease, all other terms of the Lease shall continue in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the day and year first above written.

OWNERS:

_____ (SEAL)
Wade H. Greenwood

_____ (SEAL)
Margaret K. Greenwood

_____ (SEAL)
Andy W. Greenwood                    (SEAL)

_____ (SEAL)          _____ (SEAL)
Andy W. Greenwood                      Dorothy Greenwood
for Dorothy Greenwood

_____ (SEAL)
Mary G. Aldridge

_____ (SEAL)
Eugene Aldridge

[Corporate Seal]

LESSEE:

VULCAN MATERIALS COMPANY

By: _____
Its: _____

ATTEST:

By: _____
Its: Asst. Secretary

WF0590539.01                                      - 2 -

# Surry/County Internet Copy

STATE OF ~~NORTH CAROLINA~~ _ARIZONA_
COUNTY OF _MARICOPA_ .

I, _DONNA BOBIER_, a Notary Public of the County of _MARICOPA_
State of ~~North Carolina~~, certify that WADE H. GREENWOOD and wife, MARGARET K.
GREENWOOD, personally appeared before me this day and acknowledged the execution of the
foregoing instrument.

WITNESS my hand and official stamp/seal, this the _3_ day of _FEB._, 1997.

_____
Notary Public

My Commission Expires:

_____

[Notarial Seal/Stamp]

> OFFICIAL SEAL
> DONNA J. BOBIER
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires Mar. 27, 1999

---

STATE OF NORTH CAROLINA
COUNTY OF _Forsythe_

I, _Matthew Stewart Ragan_, a Notary Public of the County of
_____, State of North Carolina, certify that ANDY W. GREENWOOD and wife,
DOROTHY GREENWOOD, personally appeared before me this day and acknowledged the
execution of the foregoing instrument.

WITNESS my hand and official stamp/seal, this the _7th_ day of _February_, 1997.

_____
Notary Public

My Commission Expires:
_August 25, 2001_

[Notarial Seal/Stamp]

> OFFICIAL SEAL
> NOTARY PUBLIC
> MATTHEW STEWART RAGAN
> GUILFORD COUNTY, NC
> My Commission Expires Aug. 25, 2001

- 3 -

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 35 of 55

STATE OF NORTH CAROLINA
COUNTY OF ~~Forsyth~~

I, a Notary Public in and for the County and State aforesaid, certify that ANDY WHITAKER GREENWOOD, Attorney-in-Fact for DOROTHY N. GREENWOOD, wife of Andy Whitaker Greenwood, personally appeared before me this day, and being by me duly sworn, says that he executed the foregoing instrument for and in behalf of Dorothy N. Greenwood, and that his authority to execute and acknowledge said instrument is contained in an instrument duly executed, acknowledged and recorded in the Office of the Register of Deeds of Surry County, North Carolina, in Book 637, at Page 438, and that this instrument was executed under and by virtue of the authority given by said instrument granting him Power of Attorney; that the said Andy Whitaker Greenwood acknowledged the due execution of the foregoing instrument for the purposes therein expressed for and in behalf of the said Dorothy N. Greenwood.

WITNESS my hand and notarial stamp/seal, this the ____ 24 day of February, 1997.

_____
Notary Public

My Commission Expires:

_____

[Stamp/Seal]

OFFICIAL SEAL
Notary Public, North Carolina
County of Forsyth
RICHARD A. VELLUCCI
My Commission Expires October 2, 1999

*********************************************************

STATE OF NORTH CAROLINA
COUNTY OF ~~Forsyth~~

I, Richard A Vellucci, a Notary Public of the County and State aforesaid, certify that ANDY W. GREENWOOD, also known as Andy Whitaker Greenwood, husband of Dorothy N. Greenwood, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and notarial stamp/seal, this the ____ 24 day of February, 1997.

_____
Notary Public

My Commission Expires:

_____

[Stamp/Seal]

OFFICIAL SEAL
Notary Public, North Carolina
County of Forsyth
RICHARD A. VELLUCCI
My Commission Expires October 2, 1999

WFUS02333.01

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 36 of 55

Book 0640 Page 0632

STATE OF NORTH CAROLINA
COUNTY OF ___SURRY___

I, ___Iris H. Amburn___, a Notary Public of the County of ___Surry___,
State of North Carolina, certify that MARY G. ALDRIDGE and husband, EUGENE ALDRIDGE,
personally appeared before me this day and acknowledged the execution of the foregoing
instrument.

WITNESS my hand and official stamp/seal, this the 10th day of February, 1997.

_Iris H. Amburn_
Notary Public

My Commission Expires:
__12/14/99__

[Notarial Seal/Stamp]

STATE OF NORTH CAROLINA
COUNTY OF _YADKIN_

I, _TERESA PEELE_, a Notary Public of the County of _YADKIN_,
State of North Carolina, certify that _M. L. BRANNAN, JR._, personally came before me this
day and acknowledged that he/she is _ASST._ Secretary of VULCAN MATERIALS
COMPANY, Mideast Division, a New Jersey corporation, and that by authority duly given and as
the act of the corporation, the foregoing instrument was signed in its name by its _NJU._ President,
sealed with its corporate seal and attested by him/her as its _ASST._ Secretary.

WITNESS my hand and official stamp/seal, this the 21st day of _February_, 1997.

_Teresa Peele_
Notary Public

My Commission Expires:
_Oct. 20, 2001_

[Notarial Seal/Stamp]

- 4 -

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 37 of 55

## Exhibit "A"

Tract No. 169, consisting of 4.68 acres, and Tract No. 170, consisting of 5.3 acres of Section 1 of the East Park Development, surveyed by J. L. Mackie, October, 1954, as per plat recorded in Plat Book 4 at Page 119 in the Office of the Register of Deeds of Surry County, North Carolina, to which plat reference is hereby made for a more particular description.

See Deed recorded in Deed Book 195 at Page 22, and being the Fifth Tract of that Deed recorded in Book 327 at Page 467 in the Office of the Register of Deeds of Surry County, North Carolina.

STATE OF NORTH CAROLINA, COUNTY OF SURRY

The foregoing or following certificate(s) of

is (are) certified to be correct.

DENNIS W. "BUD" CAMERON
REGISTER OF DEEDS

BY: _____
(Assistant-Deputy)

FILED
SURRY COUNTY NC
03/21/97 11:24 AM
DENNIS W. BUD CAMERON
Register Of Deeds

Doc No: 588174
Recorded: 07/09/2009 at 03:27:24 PM
Fee Amt: $47.00 Page 1 of 12
Surry County North Carolina
Carolyn M. Comer Reg of Deeds

Bk **1295** Pg**622-633**

STATE OF NORTH CAROLINA
COUNTY OF SURRY

### MEMORANDUM OF LEASE AMENDMENT

THIS MEMORANDUM OF LEASE AMENDMENT (the "Amendment") is made and entered into this _29_ day of _November_, 2007, by and between **MARY G. ALDRIDGE**, widow; **ROSEMARY G. PULLIAM**, successor in interest to Andy W. Greenwood, deceased, in accordance with the Last Will and Testament of Andy W. Greenwood; **NED GREENWOOD**, and **JUDY G. TUPPER**, successors in interest to **WADE H. GREENWOOD** and wife, **MARGARET K. GREENWOOD** by deed, and as Trustees of the Greenwood Family Trust ("Owners"), and **VULCAN CONSTRUCTION MATERIALS, LP**, a Delaware limited partnership, as successor in interest to Vulcan Materials Company by Assignment of Lease effective December 31, 1999, recorded in Record Book 774, Page 0456, Surry County, North Carolina ("Lessee").

### WITNESSETH:

Owners and Lessee (or their predecessors in interest) have previously entered into that certain Lease dated September 1, 1991 (the "Lease") as evidenced by Memorandum of Lease recorded at Book 510, Page 0622 in the office of the Register of Deeds of Surry County, North Carolina, and subsequently amended by Amendment to Lease dated January 21, 1997 recorded in Book 0640, Page 0628 in the office of the Register of Deeds of Surry County, North Carolina (the "First Amendment").

The parties have entered into Amendment No. 2 to Lease, effective January 27, 2003 ("Amendment No. 2"), to remove from the Lease that portion of property being a part of the property sold by Owners to Vulcan Lands, Inc. on January 27, 2003 by deed recorded at Book 917, Page 304 in the office of the Register of Deeds of Surry County, North Carolina, and to make other changes in the Lease related to such removal. Revised Exhibit A and Revised Exhibit A-1 are attached hereto to reflect the revised leased Premises.

It is understood that the Lease as amended by the First Amendment and Amendment No. 2 constitutes the complete agreement of lease between the Owners and Lessee and the same is hereby incorporated in its entirety by reference.

To facilitate execution, this Amendment may be executed in as many counterparts as may be convenient. It shall not be necessary that the signature in behalf of each party hereto appear on each counterpart. All counterparts hereof shall collectively constitute a single agreement.




PLAINTIFF'S
EXHIBIT
C

Revised Exhibit "A"
Amendment No. 2 to Lease

Located in Elkin Township, Surry County, North Carolina:

Boundary lines of area to be leased by Vulcan Construction Materials, LP from Greenwoods (Owners):

1. Home place of I. N. & Mamie Greenwood as shown in survey map done by J. L. Mackie, March 1952, excluding house and other buildings including 4.335 acres belonging to Mary Aldridge. Book 133 Page 17, & Book 83 Page 116.

2. 21 lots in Hillcrest development Section 2 Block C. This property shown in Book 4 Page 164 in Register of Deeds Office.

3. Following lots shown in Hillcrest Development Section 1B Block B, lots 7-58 Inc., #94-145 inc. Block A 1-65 inc. #178. These lots shown in Book 4 Page 163 Register of Deeds Office.

4. Tract No. 169, consisting of 4.68 acres, and Tract No. 170, consisting of 5.3 acres of Section 1 of the East Park Development, surveyed by J. L. Mackie, October, 1954, as per plat recorded in Plat Book 4 at Page 119 in the Office of the Register of Deeds of Surry County, North Carolina, to which plat reference is hereby made for a more particular description.

See Deed recorded in Deed Book 195 at Page 22, and being the Fifth Tract of that Deed recorded in Book 327 at Page 467 in the Office of the Register of Deeds of Surry County, North Carolina.

LESS AND EXCEPT that tract or parcel of land containing 4.877 acres, more or less, and being a portion of Section "1" of East Park Development as shown in Plat Book 4, page 119, SCR. BEGINNING at an existing iron pipe in the centerline of Clubhouse Drive, common corner with the property now or formerly owned by D. E. and L. H. Rose described in Deed Book 646, page 885, SCR, said point being the following courses and distances from a point in the centerline of S. R. #1142 as measured along the centerline of Clubhouse Drive: South 57 degrees 12 minutes 16 seconds West 52.46 feet; South 71 degrees 44 minutes 57 seconds West 51.88 feet; south 86 degrees 55 minutes 43 seconds West 42.89 feet; runs thence South 01 degrees 48 minutes 40 seconds West 19.07 feet to an existing pipe; South 01 degree 21 minutes 00 seconds West 302.42 feet to

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 40 of 55

an existing pipe; thence North 78 degrees 47 minutes 47 seconds East 244.67 feet to an existing iron pipe, the Northwest corner of Vulcan Lands, Inc. tract (DB 632, page 10); thence North 79 degrees 18 minutes 40 seconds East crossing over S. R. #1142 a distance of 197.61 feet to an existing iron pipe; thence North 78 degrees 44 minutes 12 seconds East 199.62 feet to an existing iron pipe; thence North 10 degrees 25 minutes 19 seconds West 40 feet to an existing iron pipe; thence North 21 degrees 26 minutes 09 seconds West 382.27 feet to a point in the centerline of the abandoned portion of Clubhouse Drive; thence with the abandoned portion of Clubhouse Drive the following three (3) courses and distances:  South 89 degrees 36 minutes 00 seconds West 26.45 feet; South 70 degrees 31 minutes 37 seconds West 177.81 feet; South 58 degrees 01 minutes 29 seconds West 170.96 feet to a point in the centerline of S. R. #1142; thence with the centerline of Clubhouse Drive the following three (3) courses and distances:  South 57 degrees 12 minutes 16 seconds West 52.46 feet; South 71 degrees 44 minutes 57 seconds West 51.88 feet; South 86 degrees 55 minutes 43 seconds West 42.89 feet to the point and place of beginning.

For further reference see:  unrecorded survey performed by Douglas M. Helms, L-3087 and dated November 27, 2002.

See Deed dated January 27, 2003 recorded in Deed Book 917 at Pages 304-310 in the Office of the Register of Deeds of Surry County, North Carolina.

NOTE: The property shown above in #1 is the property presently leased to Vulcan Materials Co. by I. N. & Mamie Greenwood on January 20, 1960.

NOTE: Any discrepancy in the identification of the Premises described in this Exhibit "A" and on the map attached as Exhibit "A-1" shall be resolved in favor of the Exhibit which shows the greatest amount of real property being leased as the Premises.

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 41 of 55



Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 42 of 55

IN WITNESS WHEREOF, the parties hereto have set their hands or caused this Amendment to be executed by their duly authorized officers, as of the date set forth above.

OWNERS:

_Mary G. Aldridge_
Mary G. Aldridge
Date: _October 18 - 2007_

Greenwood Family Trust
By:_____
Ned Greenwood, Trustee
Date:_____

By:_____
Judy G. Tupper, Trustee
Date:_____

_____
Rosemary G. Pulliam
Date:_____

LESSEE:

VULCAN CONSTRUCTION MATERIALS, LP
By Its General Partner,
Vulcan Materials Company, Mideast Division

By: _____
Its: _President_

[ACKNOWLEDGMENTS ON FOLLOWING PAGE]

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 43 of 55

STATE OF NORTH CAROLINA )
COUNTY OF _WILKES_ )

I, a Notary Public of said County and State, certify that _MARY G. ALDRIDGE_ personally came before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this _18_ day of _October_, 2007.

Patsy L. Hinson
Notary Public

My Commission Expires: _3/30/2012_

PATSY L. HINSON
NOTARY PUBLIC
WILKES COUNTY
NORTH CAROLINA
My Commission Expires March 30, 2012

STATE OF NORTH CAROLINA )
COUNTY OF _Forsyth_ Yadkin )

This _29th_ day of _November_, 2007, personally came before me _D. Gray Kinel Jr._, who, being by me duly sworn, says that he is _President_ of Vulcan Materials Company, the corporate general partner of Vulcan Construction Materials, LP, a Delaware limited partnership, and that the seal affixed to the foregoing instrument in writing is the corporate seal of said limited partnership and that said writing was signed and sealed by him on behalf of said limited partnership by its authority duly given. And the said _D. Gray Kinel Jr._ acknowledged the said writing to be the act and deed of said limited partnership.

Katrina K. Long
Notary Public

My Commission Expires: _3-21-11_

KATRINA K. LONG
Notary Public, North Carolina
County of Yadkin
My Commission Expires March 21, 2011

IN WITNESS WHEREOF, the parties hereto have set their hands or caused this Amendment to be executed by their duly authorized officers, as of the date set forth above.

OWNERS:

_____
**Mary G. Aldridge**
Date:_____

**Greenwood Family Trust**
By:_____
**Ned Greenwood, Trustee**
Date: 10 25 07

By:_____
**Judy G. Tupper, Trustee**
Date:_____

_____
**Rosemary G. Pulliam**
Date:_____

LESSEE:

**VULCAN CONSTRUCTION MATERIALS, LP**
By Its General Partner,
Vulcan Materials Company, Mideast Division

By: _____

Its: _____

[ACKNOWLEDGMENTS ON FOLLOWING PAGE]

## ACKNOWLEDGMENTS

STATE OF UTAH              )
COUNTY OF SALT LAKE     )

I, a Notary of said County and State, certify that Ned Greenwood personally came before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this 5th day of October , 2007.

_Alison Leiker_
Notary Public

My Commission Expires: June 5, 2011

NOTARY PUBLIC
ALISON LEIKER
180 E. 100 So., PO Box 45360
Salt Lake City, UT 84145-0360
My Commission Expires
June 5, 2011
STATE OF UTAH

IN WITNESS WHEREOF, the parties hereto have set their hands or caused this Amendment to be executed by their duly authorized officers, as of the date set forth above.

OWNERS:

_____
**Mary G. Aldridge**
Date:_____

**Greenwood Family Trust**
By:_____
**Ned Greenwood, Trustee**
Date:_____

By: _____
**Judy G. Tupper, Trustee**
Date: 10/26/07

_____
**Rosemary G. Pulliam**
Date:_____


LESSEE:

**VULCAN CONSTRUCTION MATERIALS, LP**
By Its General Partner,
Vulcan Materials Company, Mideast Division


By: _____

Its: _____


[ACKNOWLEDGMENTS ON FOLLOWING PAGE]

10

ACKNOWLEDGMENTS

STATE OF ~~NORTH CAROLINA~~ California )
COUNTY OF Kern )

I, a Notary Public of said County and State, certify that Judy G. Tupper
_____ personally came before me this day and acknowledged the due execution of
the foregoing instrument.

WITNESS my hand and official seal this 20th day of October, 2007.

Kathy Lindley
Notary Public

My Commission Expires: April 18, 2010

---

STATE OF NORTH CAROLINA )
COUNTY OF _____ )

I, a Notary Public of said County and State, certify that _____
_____ personally came before me this day and acknowledged the due execution of
the foregoing instrument.

WITNESS my hand and official seal this ___ day of _____, 2007.

_____
Notary Public

My Commission Expires: _____

---

STATE OF NORTH CAROLINA )
COUNTY OF _____ )

I, a Notary Public of said County and State, certify that _____
_____ personally came before me this day and acknowledged the due execution of
the foregoing instrument.

WITNESS my hand and official seal this ___ day of _____, 2007.

_____
Notary Public

My Commission Expires: _____

Book 1295 Page 631

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 48 of 55

IN WITNESS WHEREOF, the parties hereto have set their hands or caused this
Amendment to be executed by their duly authorized officers, as of the date set forth above.

OWNERS:

_____
**Mary G. Aldridge**
Date:_____

**Greenwood Family Trust**
By:_____
**Ned Greenwood, Trustee**
Date:_____

By:_____
**Judy G. Tupper, Trustee**
Date:_____

_____
**Rosemary G. Pulliam**
Date: 11-13-07

LESSEE:

**VULCAN CONSTRUCTION MATERIALS, LP**
By Its General Partner,
Vulcan Materials Company, Mideast Division

By: _____

Its: _____

[ACKNOWLEDGMENTS ON FOLLOWING PAGE]

12

ACKNOWLEDGMENTS

STATE OF NORTH CAROLINA )
COUNTY OF Forsyth )

I, a Notary Public of said County and State, certify that Rosemary G. Pulliam
_____ personally came before me this day and acknowledged the due execution of
the foregoing instrument.

WITNESS my hand and official seal this 8th day of November 2007.

_Sylvia Semy_

Notary Public Sylvia Semy

My Commission Expires: 4-22-2012

*SYLVIA SERRY*
*NOTARY*
*My Comm. Expires*
*April 22, 2012*
*PUBLIC*
*FORSYTH COUNTY NC*

STATE OF NORTH CAROLINA )
COUNTY OF _____ )

I, a Notary Public of said County and State, certify that _____
_____ personally came before me this day and acknowledged the due execution of
the foregoing instrument.

WITNESS my hand and official seal this ___ day of _____, 2007.

_____
Notary Public

My Commission Expires: _____

STATE OF NORTH CAROLINA )
COUNTY OF _____ )

I, a Notary Public of said County and State, certify that _____
_____ personally came before me this day and acknowledged the due execution of
the foregoing instrument.

WITNESS my hand and official seal this ___ day of _____, 2007.

_____
Notary Public

My Commission Expires: _____

Case 1:18-cv-01017-CCE-JLW   Document 3   Filed 12/14/18   Page 50 of 55

STATE OF NORTH CAROLINA )
COUNTY OF SURRY )

## AMENDMENT NO. 2 TO LEASE

THIS AMENDMENT NO. 2 (the "Amendment") is made and entered into this ___ day of _____, 2007, by and between MARY G. ALDRIDGE, widow; ROSEMARY G. PULLIAM, successor in interest to Andy W. Greenwood, deceased, in accordance with the Last Will and Testament of Andy W. Greenwood; NED GREENWOOD, and JUDY G. TUPPER, successors in interest to WADE H. GREENWOOD and wife, MARGARET K. GREENWOOD by deed, and as Trustees of the Greenwood Family Trust ("Owners"), and VULCAN CONSTRUCTION MATERIALS, LP, a Delaware limited partnership, as successor in interest to Vulcan Materials Company by Assignment of Lease effective December 31, 1999, recorded in Record Book 774, Page 0456, Surry County, North Carolina ("Lessee").

WHEREAS, Owners (or their predecessors in interest) and Lessee (or its predecessor in interest, Vulcan Materials Company) have previously entered into that certain Lease dated September 1, 1991, recorded in Record Book 510, Pages 622-627, Surry County, North Carolina, which Lease was subsequently amended January 21,1997 (collectively, the "Lease"), and

WHEREAS, the parties hereto desire to amend the Lease to the extent set forth herein;

NOW, THEREFORE, in consideration of the foregoing premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1. The Premises leased hereunder is hereby amended effective January 27, 2003 to remove that portion consisting of approximately 14.15 acres sold by Owners to Vulcan Lands, Inc. on January 27, 2003 ("Sold Property") described as:

(a) Track # 1 East Park Development Section 2, known as the Garden area. Plat Book 4, Page 120. This track was identified as area 4 on Exhibit A to the September 1, 1991 Lease, and is included in Tract "A" of the Sold Property.

(b) East Park Development Section 1, track 167 & 168. This track known as Burch Property at one time, and shown in Book 202, Page 91 Register of Deeds Office. This track was identified as area 5 on Exhibit A to the September 1, 1991 Lease, and is included in Tract "A" of the Sold Property.

The Premises remaining under lease from Owners to Lessee is as more particularly described in Revised Exhibit "A" and on the map identified as Revised Exhibit "A-1" attached hereto and incorporated herein by reference.

2.    Effective January 27, 2003, Paragraph 2.(c) of the Lease is deleted and replaced as follows to clarify that the Sold Property, no longer a portion of the leased Premises, will be part of the adjoining lands for which the Processing Royalty of Ten Cents ($.10) per ton will apply to stone quarried from the property, and that stone quarried on the Sold Property after the date of sale to Vulcan Lands, Inc. will not be eligible for Earned Royalty:

2.(c)    Lessee shall pay Owners a processing royalty of Ten Cents ($.10) per ton (2,000 pounds) of stone quarried on adjoining lands, including any land sold by Owners to Lessee or an affiliate of Lessee, but processed, stored, or passed through the Premises (hereinafter the "Processing Royalty"); provided, however, that no Processing Royalty shall be paid until the aggregate amount of accumulated Earned Royalty and Processing Royalty has exceeded the Minimum Annual Royalty of Thirty Thousand Dollars ($30,000.00) in one (1) Lease Year. Thereafter, Lessee shall pay Processing Royalty on a monthly basis to Owners on the amount so computed which when added to accumulated Earned Royalty exceeds Thirty Thousand Dollars ($30,000.00), until the end of that Lease Year. Notwithstanding the above, any portion of Minimum Annual Royalty not previously offset by the sum of Processing Royalty and Earned Royalty may be carried forward and offset against the sum of all future Processing Royalties and Earned Royalties.

3.    The following revisions are made effective January 1, 2007, to change the basis for calculation of Earned Royalty.

(i)    Paragraph 2.(b) of the Lease is revised and replaced in its entirety as follows:

2.(b)    Beginning January 1, 2007 and for each subsequent Lease Year beginning as of the anniversary date of the Lease term, the Lessee shall pay additional royalty at the rate of three and one-half percent (3 ½%) of the average net selling price (FOB the quarry) per ton (2,000 pounds) of stone, rock, gravel, minerals, and other construction materials (hereinafter collectively "stone"), quarried, sold and removed from the Premises (hereinafter "Earned Royalty"). The term "average net selling price" shall be construed and defined to mean the average payment received by Lessee, FOB trucks, calculated on a per ton basis after giving effect to any discounts and excluding therefrom sales and use taxes, hauling costs (whether performed by Lessee or third parties) and other normal charges by third parties against sales prices. The phrase "and other normal charges by third parties against sales prices" shall not be construed to mean any production costs involved in production of the materials being sold. Earned Royalty shall be paid only to the extent that the sum of such Earned Royalty plus Processing Royalty (hereinafter defined) exceeds prepaid Minimum Annual Royalty. During such time, and from time to time during any Lease Year that the sum of Earned Royalty plus Processing

3

Royalty has equaled the Minimum Annual Royalty, Lessee shall make monthly payments to Owners for the amounts of Earned Royalty which when added to accumulated Processing Royalties is in excess of the prepaid Minimum Annual Royalty. These payments shall be made in the month following the sale and removal of the stone. Notwithstanding the above, any portion of Minimum Annual Royalty not previously offset by Earned Royalty and Processing Royalty may be carried forward and offset against the sum of all future Earned Royalties and Processing Royalties.

      (ii)    Paragraph 2.(d) is hereby deleted in its entirety.

Except for the provisions of this Amendment No. 2, all other provisions of the Lease shall remain in full force and effect.

IN WITNESS WHEREOF, the, parties hereto have caused this Agreement to be executed and delivered for and in their names by their duly authorized officers, all as of the day and year first above written.

OWNERS:

_Mary G. Aldridge_
Mary G. Aldridge
Date:

Greenwood Family Trust
By:
Ned Greenwood, Trustee
Date: 6/25/0

By: _Judy G. Tupper_
Judy G. Tupper, Trustee
Date: 6/25/07

_Rosemary G. Pulliam_
Rosemary G. Pulliam
Date:

4

LESSEE:

VULCAN CONSTRUCTION
MATERIALS, LP
By its General Partner
Vulcan Materials Company
Mideast Division

By:_____
Name:_____
Title:_____

## ACKNOWLEDGMENTS

STATE OF NORTH CAROLINA )
COUNTY OF Wilkes )

I, a Notary Public of said County and State, certify that Mary G Aldridge personally came before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this 24th day of June, 2007.

Sandra K Parks
Notary Public

My Commission Expires: 9/30/07


STATE OF NORTH CAROLINA )
COUNTY OF Wilkes )

I, a Notary Public of said County and State, certify that Rosemary G Pulliam personally came before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this 24th day of June, 2007.

Sandra K Parks
Notary Public

My Commission Expires: 9/30/07

5

STATE OF ~~NORTH CAROLINA~~ California ~~Ct~~

COUNTY OF ___Kern___ )

I, a Notary Public of said County and State, certify that ___Judy G. Tupper___ personally came before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this 25 day of ___Jun___, 2007.

_Notary Public_

My Commission Expires: ___10-25-2010___.

CINDY D. BOUDREAUX
COMM. #1696357
Notary Public - California
Kern County
My Comm. Expires Oct. 25, 2010

STATE OF ~~NORTH CAROLINA~~ California ~~Ct~~

COUNTY OF ___Kern___ )

I, a Notary Public of said County and State, certify that ___Neal Greenwood___ personally came before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this 25 day of ___Jun___, 2007.

_Notary Public_

My Commission Expires: ___10-25-2010___

CINDY D. BOUDREAUX
COMM. #1696357
Notary Public - California
Kern County
My Comm. Expires Oct. 25, 2010

STATE OF ~~NORTH CAROLINA~~ California

COUNTY OF ___Kern___ )

This 25 day of ___June___, 2007, personally came before me ___Cindy D. Boudreaux___, who, being by me duly sworn, says that he is _____ of Vulcan Materials Company, the corporate general partner of Vulcan Construction Materials, LP, a Delaware limited partnership, and that the seal affixed to the foregoing instrument in writing is the corporate seal of said limited partnership and that said writing was signed and sealed by him on behalf of said limited partnership by its authority duly given. And the said _____ acknowledged the said writing to be the act and deed of said limited partnership.

_Notary Public_

My Commission Expires: ___10-25-2010___.

CINDY D. BOUDREAUX
COMM. #1696357
Notary Public - California
Kern County
My Comm. Expires Oct. 25, 2010

6